**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2183-24

MICHAEL VIGLIANTI and
CINDY GIRON, h/w,

    Plaintiffs-Appellants,

v.

ROLAND BLUE,

    Defendant.

_____

LEGAL BAY, LLC,

    Respondent.

_____

Argued June 3, 2026 – Decided July 14, 2026

Before Judges Gilson and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-0136-22.

Michele Labrada argued the cause for appellants (Karim Arzadi, attorneys; Michele Labrada, on the briefs).

Daniel B. Cohen argued the cause for respondent (Fox Rothschild LLP, attorneys; Daniel B. Cohen, of counsel and on the brief).

PER CURIAM

Michael Viglianti was injured in an automobile accident. He had limited insurance coverage and needed money to pay for medical treatment, including surgery. He therefore entered into a funding agreement under which Legal Bay, LLC (Legal Bay) paid $90,000 to his medical providers with the agreement that Legal Bay would be repaid with interest if Viglianti obtained a recovery in an anticipated lawsuit for his personal injuries from the automobile accident. Thereafter, Viglianti obtained the medical treatment, sued, and recovered $250,000 from the other driver. He then objected to paying the amount he owed under the funding agreement.

He and his wife, Cindy Giron, who were plaintiffs in the tort action, appeal from an order allowing Legal Bay to withdraw $166,382.30, which had been deposited into court from the settlement. They also appeal from an order denying reconsideration. Having reviewed the record, the Funding Agreement, and the law, we affirm.

A-2183-24

I.

The material facts are not in dispute. The resolution of the issues on this appeal involves applying those undisputed facts to the plain terms of the Funding Agreement.

On November 19, 2020, Viglianti was injured in an automobile accident when the car he was driving was struck by a car driven by Roland Blue (Blue). Viglianti and his wife retained the Law Offices of Karim Arzadi (Arzadi Law) to represent them in an anticipated lawsuit against Blue.

Viglianti had limited personal injury protection (PIP) coverage under the policy covering the car he had been driving.[1] Before he filed his tort action, Viglianti had exhausted his PIP coverage but needed additional medical care, including spinal fusion surgery. His medical providers Elite Orthopedic and Rehabilitation Center (Elite Orthopedic) and Bayonne Medical Center (Medical Center) informed Viglianti that they would provide the medical care at a cost of $90,000.

On November 9, 2021, Viglianti signed a funding agreement with Legal Bay (the Funding Agreement). Under the Funding Agreement, Legal Bay

---

[1] The record is not clear as to who owned the car. At one point in his papers, Viglianti claims his wife owned the car and at another point he claims he owned the car.

A-2183-24

agreed to pay $103,100, which consisted of $13,000 to be paid as an underwriting and processing fee to Legal Bay and $90,000 to be paid to Elite Orthopedic and the Medical Center.[2]

The Funding Agreement states that Legal Bay will be repaid with interest from any recovery received from the anticipated lawsuit or claim against Blue.[3] Thus, the Funding Agreement states that Legal Bay was purchasing an interest in the anticipated recoveries from Blue and that Legal Bay will be repaid from those proceeds. In that regard, the Funding Agreement defined the terms "Claim", "Recovery," and "Purchase Price" as follows:

> WHEREAS, [Viglianti] has asserted the following claims to recover money damages in a lawsuit entitled: Michael [Viglianti] v. [Roland Blue], et al.; filed (or to be filed) in New Jersey; Claim #: tbd (the "Claim");
>
> . . . .
>
> WHEREAS, [Legal Bay] will be paid from the proceeds recovered from the Claim in the event that [Viglianti] obtains any monetary recovery (the "Recovery") from the Claim or any related claims. The proceeds will be that portion of the Recovery set forth

---

[2]  Neither the Funding Agreement nor the record clearly state to whom the remaining $100 was given.

[3]  The Funding Agreement references a lawsuit against Juana Rivera-Menendez, but the parties clarified to us that plaintiffs eventually sued Blue and no one disputes that the Funding Agreement covers the lawsuit filed against Blue.

in the Disclosure Statement in paragraph [three] of this Agreement;

WHEREAS, [Legal Bay] provides [Viglianti] with monies for [Viglianti's] life's necessities (but not to fund [Viglianti's] Claims) by purchasing the right to receive a portion of the Recovery should there be any recovery from the Claim by way of a verdict, judgment, settlement, award, compromise, or otherwise (called the "Proceeds"); and

WHEREAS, [Viglianti] desires to sell, and [Legal Bay] desires to purchase, the Proceeds from the possible Recovery from the Claim (the "Share" or "Purchaser's Share").

NOW THEREFORE, for good and valuable consideration, the receipt, sufficiency and adequacy of which is hereby acknowledged, the parties hereby agree as follows:

1.    **Purchase Price; Deduction of Flat Fee**. [Legal Bay] shall pay the sum of $103,100 (the "Purchase Price") to [Viglianti], which includes a $13,000 Underwriting and Processing fee. . . . [Legal Bay] will disburse to [Viglianti] the net amount of $90,100 in connection with this Agreement and the exhibits annexed to this Agreement.

The Funding Agreement makes it clear that Legal Bay will be paid only if and when there was a recovery in the action against Blue. Thus, the Funding Agreement states: "If the Recovery is insufficient to pay the Proceeds, then [Legal Bay's] Share will be limited to the Recovery from the Claim. If

5

A-2183-24

[Viglianti] does not receive, obtain or collect any money from the Claim, then [Viglianti] will owe nothing to [Legal Bay]."

The Funding Agreement also identifies the amount Viglianti would pay from the proceeds of his tort recovery. In that regard, the Funding Agreement states that Legal Bay's share of the proceeds would increase at a rate of "20.00% for [the first six] months; and 40.00% for the first twelve months." Thereafter, Legal Bay's share would increase at a rate of "20.00% for each [six] month period thereafter until the case is paid in full." The Funding Agreement also included a "Disclosure Statement", which provides:

5.     Total Amount to be Paid by [Viglianti]:

| After: 10/29/2021 | 00 to 06 Months | $123,720.00 |
| After: 04/29/2022 | 06 to 12 Months | $144,340.00 |
| After: 10/29/2022 | 12 to 18 Months | $164,960.00 |
| After: 04/29/2023 | 18 to 24 Months | $185,580.00 |
| After: 10/29/2023 | 24 to 30 Months | $206,200.00 |
| After: 04/29/2024 | 30 to 36 Months | $226,820.00 |

The Seller's Payment Obligation will continue to accrue at $18,280.00 or 20.00% (Flat Fee) of the Total Purchase Price for each 6 month period after the 36 month period. Call for final payoff. PLEASE READ #8 FOR ADDITIONAL REPRESENTATIONS AND DISCLOSURES.[4]

---

[4] We note these interest rates and amount to be paid by Viglianti are not consistently stated.

A-2183-24

Additionally, the Funding Agreement included a provision entitled "Sale of Portion from [Viglianti's] Contingent Recovery," which stated:

> [Viglianti] has valid reasons for selling [Legal Bay] a portion of the Recovery as opposed to waiting until there is a verdict, judgment, award, settlement, compromise or other resolution of the Claim. The Purchase Price received by [Viglianti] from [Legal Bay] must be used for immediate economic necessities or other purposes that [Viglianti] deems important. [Viglianti] represents and notifies to [Legal Bay] that the Purchase Price will not be used either directly or indirectly to pursue the Claim in any manner.

The Funding Agreement also stated that the payment by Legal Bay was "not a loan."

As part of the Funding Agreement, Arzadi Law acknowledged it had reviewed the Funding Agreement and explained its terms and conditions to Viglianti. Arzadi Law also agreed to withhold any proceeds owed to Legal Bay from any recoveries received from Viglianti's claim against Blue. Additionally, Arzadi Law acknowledged "this funding is for medical needs of [Viglianti] and cash value added to the case is for substantial benefit for [Viglianti]. Said funding shall be deemed a medical lien and shall be paid in preference in accordance with law."

There is no dispute that Legal Bay paid $70,000 to Elite Orthopedic and $20,000 to the Medical Center. There is also no dispute that in November 2021,

7

Viglianti received medical treatment from Elite Orthopedic at the Medical Center, including a spinal fusion. Indeed, the record reflects that although Viglianti paid Elite Orthopedic $70,000, Elite Orthopedic's full statement of the charges for his spinal fusion and follow-up treatment were $293,031.

In January 2022, Viglianti and his wife sued Blue, claiming Blue negligently caused the automobile accident and was responsible for Viglianti's personal injuries, including his medical expenses. Plaintiffs were represented by Arzadi Law in that action.[5]

Over two years later, on April 29, 2024, plaintiffs settled their claims against Blue for $250,000. Plaintiffs' counsel informed us that the settlement was for the full insurance coverage available to Blue.

Following the settlement, a dispute arose as to what amount should be paid to Legal Bay. Blue therefore moved to deposit the $250,000 into the court.

On September 18, 2024, the trial court granted Blue's motion and entered an order directing (1) $83,617.70 (consisting of $83,191.14 in fees and $426.46 in costs) was to be paid to Arzadi Law; (2) the remaining $166,382.30 was to be

---

[5] The complaint is dated December 16, 2021; however, the complaint was not filed until January 13, 2022.

A-2183-24

deposited into a court account in accordance with Rule 4:57-2(a); and (3) the $166,382.30 would be held until the court ordered its release.

Several weeks later, in October 2024, Legal Bay moved to withdraw all the remaining funds that had been deposited into court. Legal Bay represented that it was a lienholder of the settlement proceeds under the terms of the Funding Agreement. Initially, Viglianti did not oppose that motion and an order was entered to pay the funds held in the court to Legal Bay. The amount set forth in the order, however, was incorrect. Therefore, Legal Bay filed a second motion in December 2024. In that motion, Legal Bay submitted the Funding Agreement and claimed it was entitled to up to $226,820 as of April 2024. Legal Bay, therefore, sought the $166,382.30 that had been deposited into the court.

Viglianti, represented by Arzadi Law, opposed Legal Bay's second motion to withdraw the funds. Viglianti argued that the Funding Agreement was illegal because it permitted a medical provider to receive more than the PIP fee schedules allowed under N.J.S.A. 39:6A-4.6. Viglianti also argued that Legal Bay was effectively trying to enforce a medical lien from a physician and, under N.J.S.A. 2A:44-39, the lien was limited to twenty-five percent of the $250,000 settlement.

A-2183-24

On January 22, 2025, the trial court entered an order granting Legal Bay's motion and directing that the $166,382.30 on deposit with the court was to be paid to Legal Bay.[6] The court supported its order with a written letter opinion.

In its opinion, the trial court rejected both of Viglianti's arguments. The court reasoned that Legal Bay was not a medical provider and the Funding Agreement was not governed or limited by N.J.S.A. 39:6A-12 or N.J.S.A. 39:6A-4.6. In that regard, the trial court reasoned that once Viglianti's PIP benefits were exhausted, the PIP fee schedules did not govern the payment under the Funding Agreement.

The court also held that Legal Bay was not a physician within the meaning of N.J.S.A. 2A:44-39 and, therefore, its right to recover under the Funding Agreement was not limited by that statutory provision. The court held that N.J.S.A. 2A:44-39 was limited to liens made by physicians or dentists and rejected Viglianti's assertion that Legal Bay's claim was "related to" a physician's claim.

---

[6] When the funds were deposited into court, the order directed that the funds were to be held in an interest-bearing account. The January 22, 2025 order does not discuss whether interest had accrued or who was entitled to receive the interest.

Viglianti moved for reconsideration. After hearing further arguments, on March 7, 2025, the trial court entered an order denying reconsideration. The trial court also issued a written opinion supporting that order. In its opinion, the trial court determined that Viglianti had shown no grounds for reconsideration. In that regard, the court reviewed its previous rulings and reasoned they were not palpably incorrect or wrong under the law.

Viglianti now appeals from the January 22, 2025 order allowing the withdrawal of the funds, and the March 7, 2025 order denying reconsideration.

## II.

On appeal, Viglianti makes two arguments. First, he contends that Legal Bay did not have standing to seek the funds that had been deposited into court because Legal Bay was not a party to the tort action and did not intervene in the action. Second, Viglianti asserts that the Funding Agreement is unenforceable because it conflicts with N.J.S.A. 39:6A-12, N.J.S.A. 39:6A-4.6, and N.J.S.A. 2A:44-39. We are not persuaded by those arguments and affirm.

### A. Standing.

We reject the standing arguments because Viglianti did not raise standing before the trial court. Appellate courts normally do not consider an issue that was not raised before the trial court because the parties have not fully developed

11

the issue.  See State v. Witt, 223 N.J. 409, 418-19 (2015); Neider v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).  This principle is based on the rationale that "the points of divergence developed in the proceedings before a trial court define the metes and bounds of appellate review."  Witt, 223 N.J. at 419 (quoting State v. Robinson, 200 N.J. 1, 19 (2009)).  "For sound jurisprudential reasons, with few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such presentation [was] available.'"  Ibid. (quoting Robinson, 200 N.J. at 20).  In this matter, we will not make an exception and allow Viglianti to raise a standing argument for the first time on appeal.

Moreover, we note that had Viglianti raised standing in the trial court, it would have been relatively easy for Legal Bay to move to intervene or file its own action to enforce the Funding Agreement.  In that regard, the Funding Agreement provides that Legal Bay was to be paid directly out of the proceeds of any settlement.  Thus, if complied with, the Funding Agreement would not have required Legal Bay to file any motion.  The Funding Agreement also provides that Legal Bay's right to the "Claim" would be considered a lien if the claim was not immediately paid out of the settlement or recovery proceeds.

12

Therefore, Legal Bay had a right to enforce its lien in accordance with the terms of the Funding Agreement.  See R. 4:73-9; R. 4:57-2; R. 4:57-5.

B.    The Enforceability of the Funding Agreement.

The enforceability of the Funding Agreement presents a question of law because it involves the interpretation of a contract.  Appellate courts review a trial court's interpretation of a contract de novo.  Boyle v. Huff, 257 N.J. 468, 477 (2024); Serico v. Rothberg, 234 N.J. 168, 178 (2018); Focazio v. Aboyoun, 481 N.J. Super. 153, 164 (App. Div. 2025).  Moreover, appellate courts review legal issues de novo.  Green v. Monmouth Univ., 237 N.J. 516, 529 (2019); Holtham v. Lucas, 460 N.J. Super. 308, 316-317 (App. Div. 2019).  In that regard, our review in this matter is de novo because "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference."  Brehme v. Irwin, 259 N.J. 505, 511 (2025) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Initially, we note Legal Bay's Funding Agreement did not fund the litigation; rather it paid for medical care and expressly stated it was not funding the anticipated litigation.  Thus, it was not a typical litigation funding agreement.  See Est. of Dizon by Finamore v. Dep't of Hum. Servs., 481 N.J. Super. 451,

462 (App. Div. 2025) (quoting Black's Law Dictionary 1117 (12th ed. 2024)) (explaining a "litigation funding " is "a type of investment in a lawsuit, typically for the plaintiff").  The Funding Agreement did enhance the claims against Blue because it allowed Viglianti to claim his unreimbursed medical expenses.  In that regard, as part of the Funding Agreement Arzadi Law acknowledged "this funding is for medical needs of [Viglianti] and cash value added to the case is for substantial benefit for [Viglianti].  Said funding shall be deemed a medical lien and shall be paid in preference in accordance with law."

We also point out that Viglianti is not challenging the Funding Agreement on the grounds he did not voluntarily sign the Agreement for consideration.  It is undisputable that Viglianti received consideration, and, in return, he promised to repay Legal Bay the amount Legal Bay paid for his medical treatment plus interest.  Moreover, it is indisputable that Viglianti and his attorney, Arzadi Law, knew (1) he needed $90,000 to get fusion surgery; (2) he would be provided with that surgery if the $90,000 was paid; (3) Legal Bay paid the $90,000; and (4) Viglianti received the surgery.  Therefore, when Viglianti settled his claim against Blue for $250,000, he knew he had already received $90,000 for medical treatment and he would not receive any of the settlement proceeds because a

portion would go to Arzadi Law and the remaining amount would go to Legal Bay. In short, there was no surprise claim by Legal Bay.

Viglianti now wants to argue that the Funding Agreement is an illegal agreement, which should not be enforced because it is arguably inconsistent with N.J.S.A. 39:6A-12, N.J.S.A. 39:6A-4.6, and N.J.S.A. 2A:44-39. We reject those contentions.

First, Viglianti cites to N.J.S.A. 39:6A-12 and argues it allows an injured party to recover unreimbursed medical expenses not covered by PIP insurance. He then argues that N.J.S.A. 39:6A-4.6 limits what a "health care provider" can demand from a person injured in an automobile accident to amounts set forth in "medical fee schedules" established by the Commissioner of Banking and Insurance.

N.J.S.A. 39:6A-12 and N.J.S.A. 39:6A-4.6 are part of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, which is part of New Jersey's no-fault automobile insurance system. Under AICRA, every standard automobile liability insurance policy issued in New Jersey must provide PIP benefits to the named insured and members of the insured's household. N.J.S.A. 39:6A-4. Those benefits are paid regardless of who is at fault for the accident. Ibid. AICRA establishes a system to expeditiously

15

resolve disputes regarding the amount or legitimacy of PIP claims. N.J.S.A. 39:6A-5.1(c), (d); N.J.S.A. 39:6A-5.2. Therefore, the two statutory provisions Viglianti points to must be read in context.

N.J.S.A. 39:6A-12 states, in relevant part:

> Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss as defined by [N.J.S.A. 39:6A-2], including all unreimbursed medical expenses not covered by the personal injury protection limits applicable to the injured party and sustained by the injured party, including the value of any deductibles and copayments incurred through a driver's secondary insurance coverage and medical liens asserted by a health insurance company related to the treatment of injuries sustained in the accident. Medical expenses shall be subject to the current automobile medical fee schedules established pursuant to [N.J.S.A. 39:6A-4.6]. In any case in which the recovery is for medical expenses only, a prevailing claimant shall be entitled to reasonable and necessary attorneys' fees incurred by the prevailing claimant in the collection of such medical expenses.[7]

N.J.S.A. 39:6A-4.6 provides, in relevant part:

> No health care provider may demand or request any payment from any person in excess of those permitted

---

[7] We note that the Legislature passed two versions of this statute in 2019. See L. 2019 c. 244 and c. 245. We have cited and quoted L. 2019 c. 245, which states "[t]his act shall take effect on August 1, 2019 and shall apply to automobile accidents occurring on or after that date." Moreover, we point out that under either version of the statute, Viglianti's Funding Agreement is not subject to the medical fee schedules for health care providers.

by the medical fee schedules established pursuant to this section, nor shall any person be liable to any health care provider for any amounts of money which result from the charging of fees in excess of those permitted by the medical fee schedules established pursuant to this section. This subsection shall apply to unreimbursed medical expenses that are subject to the medical fee schedules and admissible as uncompensated economic loss pursuant to [N.J.S.A. 39:6A-12.]

The medical fee schedules established by 39:6A-4.6 expressly apply to "medical expense benefits for which payment is to be made by an automobile insurer under personal injury protection coverage." N.J.S.A. 39:6A-4.6(a).

The plain language in those statutes applies to claims against tortfeasors and governs the measure of damages against those tortfeasors. The language of those statutes does not apply to, govern, or limit a private agreement. Thus, those statutes do not apply to the Funding Agreement between Legal Bay and Viglianti because that agreement was freely and voluntarily negotiated. Moreover, Viglianti was represented by counsel who reviewed and explained the terms of the Funding Agreement to him.

Furthermore, the fee schedule set forth in N.J.S.A. 39:6A-4.6 controls what insurers pay under PIP. The schedules do not apply to what an individual may agree to voluntarily and privately pay when PIP coverage has been exhausted.

Second, Viglianti invokes N.J.S.A. 2A:44-39 and argues that statutory provision limits Legal Bay's recovery. N.J.S.A. 2A:44-39 addresses liens asserted by physicians or dentists, and states:

> The amount of the lien of the physician or dentist for services rendered to a person as a result of an accident shall be based upon the reasonable value thereof, but not to exceed twenty-five per centum (25%) of the amount of any award, report, decision, judgment or settlement to the injured person.
>
> [N.J.S.A. 2A:44-39.]

By its plain language, that statutory provision applies only to physicians and dentists who render medical services to an injured person and then assert a lien against the recovery the injured person obtains from a tortfeasor. N.J.S.A. 2A:44-39 does not apply to third-party funding arrangements, like the Funding Agreement.

We reject Viglianti's argument that Legal Bay's claim to the settlement funds is governed by the statute because it "relates to" medical care provided by Elite Orthopedic. The Funding Agreement makes it clear that Viglianti, or someone on his behalf, negotiated what was going to be paid to Elite Orthopedic and the Medical Center so that Viglianti could receive a spinal fusion. If Viglianti believed that the medical schedules referenced in N.J.S.A. 2A:44-39

18

applied to treatment to be given by Elite Orthopedic, his time for making that argument was when he negotiated what would be paid to Elite Orthopedic.

In short, none of the statutory provisions cited by Viglianti applies to or limits the private contractual Funding Agreement he voluntarily entered with Legal Bay. We therefore affirm both the January 22, 2025 order and the March 7, 2025 order in this matter.

C.      A Note of Limitation.

Finally, we point out that our opinion in this matter is limited in scope. Viglianti did not challenge the interest rate or amounts he agreed to pay to Legal Bay. Thus, we have not addressed whether the amount sought is fair and reasonable. Legal Bay paid $90,000 to health care providers so that Viglianti could receive medical treatment in 2021. Several years later, Legal Bay will now receive $166,382.30, which is $76,382.30 more than the $90,000 it paid. In this opinion, we are not called upon to evaluate the fairness of that return on what is essentially a contingent investment. See generally Dopp v. Yari, 927 F. Supp. 814, 820-21 (D.N.J. 1996) (discussing the enforceability of a litigation funding agreement with respect to usury limits). We are aware, however, that the Legislature is considering legislation to govern litigation funding agreements, including capping the percentage of what can be paid under a

litigation funding agreement.  <u>See</u> <u>S. 2357</u> / <u>A. 2159</u> (2026).  This opinion does not address whether courts have independent authority to limit the amount of a recovery under a funding agreement when funds are paid into court under <u>Rule</u> 4:73-9.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-2183-24